IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION


SANDRA K. ARWOOD                                              PLAINTIFF

V.                                                            CIVIL ACTION NO.
                                                              2:07-CV-222-M-A
COMMISSIONER OF
SOCIAL SECURITY                                               DEFENDANT


## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff, Sandra K. Arwood, for period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The court's jurisdiction over Arwood's claim rests upon 28 U.S.C. § 1331.

## PROCEDURAL HISTORY

Plaintiff filed her application for disability, disability insurance benefits, and supplemental security income on May 1, 2003, alleging an onset date of disability of December 24, 2002. After her claim was denied twice, Arwood requested a hearing before an administrative law judge (ALJ), which was held on December 2, 2005; a supplemental hearing was held on May 24, 2006. On June 5, 2006, the ALJ issued his decision denying the claim, holding that the plaintiff was not disabled. Arwood's request for review by the Appeals Council was denied on November 1, 2007. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner, which is now ripe for the court's review.

## **FACTS**

Plaintiff was born on July 17, 1952 and was fifty-three years old at the time of the disability hearing and supplemental disability hearing. She completed the eleventh grade, but did not obtain a GED. Her past relevant employment included bundle girl in a sewing factory, cashier/clerk in a laundromat, and cashier and order picker. Tr. 86.

Arwood alleged that she became disabled on December 24, 2002 due to arthritis, fibromyalgia, back problems, depression, spastic [sic] colon, anxiety and emphysema. Tr. 71. Arwood received routine medical care at the Desoto Family Medical Center. Tr. 114-171. She was also treated by medical specialists such as Dr. Ash – a rheumatologist [Tr. 191-201, 247-262, 296-305], Dr. Beatus – a psychiatrist [Tr. 218-225; 288-295], Dr. Schnapp – a pain specialist [Tr. 202-206, 279-287, 306-313] and pulmonary specialists [Tr. 210-217]. In addition, Arwood underwent a consultative mental examination and a residual functional capacity examination [226-243], a consultative mental evaluation [Tr. 263-68], and a consultative physical examination [Tr. 269-277].

The ALJ considered Arwood's symptoms and found that they were not consistent with the objective medical evidence. Tr. 20. The ALJ determined she had a residual functional capacity [RFC] to lift/carry and push/pull ten pounds occasionally and frequently and to stand/walk two hours in an 8-hour workday and sit six hours in an 8-hour workday. The AlJ found she must avoid exposure to cold and hot temperature extremes, chemicals, dust, fumes and humidity. Tr. 22. Finally, considering the plaintiff's RFC, past relevant work experience, age, education and the testimony of the Vocational Expert [VE], the ALJ determined that Arwood

was not disabled and that work as a check cashier was available for her to perform. Tr. 23.

Plaintiff presented the Appeals Council with additional evidence after the ALJ's decision, including: a medical source statement from Dr. Robert Buchalter [Tr. 315-317], a medical source statement from Ahaminsha, APRN [Tr. 318-320] and a functional capacity examination from Dan Napoli [Tr. 321-332].

## DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner considers their assessment of the claimant's residual functional capacity and the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that

---

[3] *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520(2007).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv)(2007).

she is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

Arwood claims that the Commissioner's decision was flawed in that:

1) The ALJ misstated Arwood's ability to perform activities of daily living;
2) The Appeals Council failed to consider the new evidence provided;
3) The ALJ erred by accepting a non-treating, non-examining source over both the consultative examination and a treating source;
4) The ALJ failed to develop the evidence from the treating physicians;
5) The ALJ failed to properly consider the objective and subjective complaints of pain by the plaintiff; and
6) The ALJ failed to consider the plaintiff's hypokalemia
7) The ALJ failed to comply with the Commissioner's policies in evaluating her fibromyalgia..

Plaintiff's claims that the ALJ misstated her ability to perform activities of daily living, failed to develop the evidence from the treating physicians and failed to consider her hypokalemia are a challenge to whether there was substantial evidence to support the ALJ's decision. The remainder of her claims involve whether the proper legal standard was applied.

The ALJ discounted Arwood's testimony regarding her ability to perform activities of daily living as he found it inconsistent with her statements to Dr. Whelan. Tr. 20. Arwood testified at the hearing that when performing household tasks, she must take breaks and sit down. Tr. 20. She told Dr. Whelan that she does occasionally cook and clean, but that she has trouble doing these simple tasks as evidenced by burning hard boiled eggs. Tr. 264. Although these statements concerning her ability to perform simple activities of daily living are not identical,

---

[9] 20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v)(2007).

[10] *Muse*, 925 F.2d at 789.

they are similar enough that they do not contradict each other. Therefore, the court concludes that there was not substantial evidence to support the ALJ's conclusion concerning Arwood's ability to perform activities of daily living.

The ALJ found that Arwood has a history of depression with anxiety, was being treated with various medications and that her sleep and tolerance of medication were good. Tr. 18. The ALJ, however, failed to address the fact that she reported suicidal thoughts to Dr. Whelan [Tr. 264], that she required sleeping pills to help her sleep at night and that she testified that her treating psychiatrist, Dr. Beatus, had suggested shock treatment therapy. Tr.344, 347. The ALJ did receive supplemental medical records from the plaintiff's rheumatologist, pain specialist, and psychiatrist before the supplemental hearing, but it is not clear that he considered the disabling effect of her depression alone or in combination with her other conditions.

Finally, Arwood correctly asserts that the ALJ never mentioned the potential effect of hypokalemia in her ability to function. Although her hypokalemia may have been transient, there is no indication in the record whether her ability to work was or is affected by it. The ALJ should have requested additional information from the plaintiff's treating physicians regarding her hypokalemia.

Plaintiff claims that the ALJ erred in failing to accord proper weight to the opinions of her treating physician and the consultative physician. The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines

6

> that the treating physician's records are inconclusive or otherwise
> inadequate to receive controlling weight, absent other medical opinion
> evidence based on personal examination or treatment of the claimant, the
> ALJ must seek clarification or additional evidence from the treating
> physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original). The regulations cited in *Newton* also correspond to 20 C.F.R. §§ 416.927(d) and 416.912(e), which are applicable in cases, such as this one, also brought under Title XVI of the Social Security Act. Under 20 C.F.R. §§ 404.1527(d) & 416.927(d), the factors to be considered in assessing the opinion of the *treating* physician include such common sense considerations as the length of the treatment relationship, frequency of examination by the physician, the nature and extent of the treatment relationship, and the "supportability" of a medical source's opinion by relevant evidence. Section 404.1527(d)(3)[11] specifically defines "supportability" by detailing the approach that should be taken with non-examining medical sources whose opinions are not founded upon direct knowledge of a particular claimant's case:

> The more a medical source presents relevant evidence to support an
> opinion, particularly medical signs and laboratory findings, the more
> weight we will give that opinion. The better an explanation a source
> provides for an opinion, the more weight we will give that opinion.
> Furthermore, because nonexamining sources have no examining or
> treating relationship with you, the weight we will give their opinions
> will depend on the degree to which they provide supporting
> explanations for their opinions. We will evaluate the degree to which
> these opinions consider all of the pertinent evidence in your claim,
> including opinions of treating and other examining sources.

---

[11] *See also* § 416.927(d)(3).

Section 416.1527(f)(2)(ii)[12] further discusses the role of state agency consultants:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

The ALJ accepted and gave greater weight to state agency psychologist, Linda Baker's opinion than to Dr. Whelan's opinion on the basis that her opinion was consistent with the objective evidence. Tr. 18. He did not, however, cite what specific objective evidence was persuasive to support Dr. Baker's opinion over Dr. Whelan's opinion. Further, the ALJ should have developed the evidence concerning her mental functioning with Arwood's treating psychiatrist, Dr. Beatus, as Dr. Beatus had a treating relationship with the plaintiff.

Next, Arwood claims that the ALJ failed properly to consider the objective evidence and her subjective complaints of pain. The ALJ found that the plaintiff's complaints and allegations were unsupported by the objective evidence as required by 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. Tr. 20. Specifically, the ALJ noted the plaintiff received epidural blocks for pain and pain patches, which helped with the pain. Tr. 21. In addition, the ALJ cited to the plaintiff's varying ratings of pain over time. Tr. 21. Finally, the ALJ found it significant that the

---

[12] *See also* § 416.927(f)(2)(ii).

plaintiff saw the pain specialist on an "intermittent" basis. Tr. 21.

In evaluating the effect of pain, the agency requires the ALJ to consider both the objective evidence of pain[13] and other evidence of pain, because symptoms can sometimes suggest pain of greater severity of impairment than can be shown with objective medical evidence.[14] The plaintiff's statements about the intensity and persistence of her pain or about the effect the symptoms have on her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. SSR 96-7p, 1996 WL 374186, *1. In determining Arwood's credibility, the ALJ must consider the following factors:

> (i) her daily activities:
> (ii) the location, duration, frequency and intensity of her pain or other symptoms;
> (iii) factors that precipitate and aggravate the symptoms;
> (iv) the type, dosage, effectiveness and side effects of any medication that she takes or has taken to alleviate pain or other symptoms;
> (v) treatment, other than medication, she receives or has received for relief of pain or other symptoms;
> (vi) any measures other than treatment she uses or has used to relieve pain or other symptoms; and
> (vii) any other factors concerning her functional limitation and restrictions due to pain or other symptoms.[15]

The ALJ performed a cursory evaluation of the factors as required by regulation. As discussed above, his conclusion regarding her ability to perform activities of daily living was not supported by the evidence. In his analysis of her credibility, the ALJ did not discuss the location, duration, or intensity of her pain, nor did he address what factors aggravate or precipitate it. He did state that the epidural blocks and pain patches helped with the pain, but did not discuss the

---

[13] 20 C.F.R. §404. 1529(c)(2)(2008)

[14] 20 C.F.R. §404. 1529(c)(3)(2008).

[15] 20 C.F.R. §404.1529(c), § 416.929(c)(2008).

9

pain medication Arwood was taking. Arwood testified that she took Darvocet for the pain, which was not effective, and she was being treated with morphine. Tr. 342. The ALJ did not address the strength or possible side effects of these medications. In addition, Arwood testified to using a TENS unit with relief for pain [Tr. 343], the ALJ did not address this in his analysis of her credibility regarding her pain. Arwood testified that she was able to sit only thirty minutes at the most and could stand for only 30-45 minutes without getting uncomfortable. Tr. 345. The ALJ should have considered this testimony in his analysis of her credibility regarding her pain and its effect. In assessing Arwood's credibility concerning her pain the ALJ failed to follow the required analysis as set forth in the regulations and as interpreted by the Social Security Ruling.

Finally, Arwood contends that the ALJ failed to follow the Commissioner's policies in evaluating her fibromyalgia. The ALJ determined that the plaintiff did indeed have the severe impairment of fibromyalgia. Tr. 16. Consequently, the court finds no merit to this claim.

For the foregoing reasons, the court concludes that the Commissioner's decision that Arwood could still perform work that exists in significant numbers is not supported by substantial evidence and is not in accordance with proper legal standards. The case will be remanded to the Commissioner of Social Security with instructions to require the ALJ to review the evidence *de novo,* including the evidence presented to the Appeals Council, taking such further evidence as is required to determine the plaintiff's eligibility for benefits under the law and in accordance with this Memorandum Opinion. A separate final judgment in accordance with these findings will issue this day.

This the 18th day of March, 2009.

                                                    **/s/ MICHAEL P. MILLS**
                                                    **CHIEF JUDGE**
                                                    **UNITED STATES DISTRICT COURT**
                                                    **NORTHERN DISTRICT OF MISSISSIPPI**